1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
9                              AT TACOMA

10   ZURICH AMERICAN INSURANCE
     COMPANY, an Illinois corporation,
11
                                                  Case No. C08-5284FDB
12              Plaintiff,

13        v.                                      ORDER GRANTING ZURICH
                                                  AMERICAN'S MOTION FOR
14   R. L. ALIA COMPANY, a Washington             SUMMARY JUDGMENT
     corporation; and A. B. NAPIER and
15   BEATRICE NAPIER, husband and wife,

16              Defendants.

17                            **INTRODUCTION**

18        This insurance coverage action arises from an underlying Superior Court lawsuit filed by the

19   Napiers against R. L. Alia Company (Alia).  Alia is a general contractor and is the named insured

20   under a commercial liability insurance policy issued by Zurich American Insurance Company

21   (Zurich).  Zurich seeks a declaratory judgment that (1) Zurich has no obligation to provide or pay for

22   the defense of Defendant R. L. Alia Company in a lawsuit filed against it in Pierce County Superior

23   Court by Defendants A. B. Napier and Beatrice Napier and that Zurich may recover from Alia any

24   defense costs that Zurich has paid on Alia's behalf; and (2) that Zurich has no duty to indemnify Alia

25   for any judgment or settlement of the Napiers' claims.

26   ORDER - 1

1  In April 2004, when Alia was working on installing a sewer line near the Napiers' property,

2 Alia asked the Napiers whether he could stockpile excavated soil on their property while it worked

3 on the sewer project nearby.  The Napiers agreed, and an agreement was signed by the parties in

4 April 2004.

5  Alia's performance of the work on the Napiers' property is disputed: the Napiers allege that

6 Alia had sole control over the work, that it dumped huge quantities of soil on the property where it

7 chose and spread it with bulldozers.  Alia alleges that it placed soil accordingly to Mr. Napier's

8 instructions, and that the Napiers, themselves, moved some soil.

9  There is no dispute that on October 28, 2004, Pierce County sent the Napiers a correction

10 notice and cease and desist order from the Development Engineering Section of the Pierce County

11 Department of Planning and Land Services, which alleged unpermitted work on the Napiers'

12 property, including grading without a valid site development permit, stockpiling excavation waste

13 materials without a valid site development permit, using a temporary driveway for street access

14 without a permit, lack of erosion and sedimentary control measures, and grading/filling in a

15 designated wetland.  On November 1, 2004, another correction notice and cease and desist order

16 was sent, this time from the Resource Management Division of the Pierce County Department of

17 Planning and Land Services, citing unpermitted work in violation of various land use and

18 environmental regulations, including clearing, grading, filling/dumping, and "changing chemistry."

19 The notice/order required the Napiers to stop all work, immediately install erosion and sedimentation

20 controls, and to hire a wetlands specialist to assist with compliance.

21  The extent of Alia's efforts to assist the Napiers in responding to the correction notices is

22 disputed in the Superior Court action: Alia alleges that it attempted to negotiate with the Napiers to

23 formulate a remediation plan and the scope of financial responsibility but could not reach agreement,

24 and the Napiers contend that Alia initially agreed to take care of the problem but then abandoned its

25 efforts when the Napiers refused to pay part of the costs.

26 ORDER - 2

1    The Napiers allege that they listed their property for sale in July 2004; they contend that the

2    original fair market value of the property was approximately One Million Dollars.  Confronted with

3    the enforcement action, the Napiers contend that they were compelled in January 2005 to sell their

4    property to "Pool Brothers," a local developer, for Five Hundred Thousand Dollars.  Remediation

5    costs were deducted from the Napiers' profits when the sale closed in September 2006.

6        The Napiers join in those portions of Alia's opposition arguments to Zurich's motion that

7    explain why coverage for the damages at issue are not excluded under the policy.

8                            **SUMMARY JUDGMENT STANDARD**

9        Summary judgment is proper if  the moving party establishes that there are no genuine issues

10   of material fact and it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  If the moving

11   party shows that there are no genuine issues of material fact, the non-moving party must go beyond

12   the pleadings and designate facts showing an issue for trial.  *Celotex Corp. v.  Catrett*, 477 U.S. 317,

13   322-323 (1986).  Inferences drawn from the facts are viewed in favor of the non-moving party.  *T.W.*

14   *Elec. Service v. Pacific Elec. Contractors,* 809 F.2d 626, 630-31 (9th Cir. 1987).

15       Summary judgment is proper if a defendant shows that there is no evidence supporting an

16   element essential to a plaintiff's claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).   Failure of

17   proof as to any essential element of plaintiff's claims means that no genuine issue of material fact can

18   exist and summary judgment is mandated.  *Celotex*, 477 U.S. 317, 322-23 (1986).  The nonmoving

19   party "must do more than show there is some metaphysical doubt as to the material facts."

20   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

21                                  **DISCUSSION**

22   *Zurich's Arguments*

23       Zurich argues that it is not obligated to defend or to indemnify Alia under the commercial

24   liability policy that it issued to Alia because the loss is not caused by an "occurrence" as defined in

25   the policy, because the claimant's alleged injury is not "property damage" as alleged in the policy,

26   ORDER - 3

1  and/or because coverage is barred by exclusions for pollution and/or business risks.

2  　　Liability insurers owe two distinct duties to their insured. First, the duty to defend, which is

3  determined by analyzing whether the allegations in the complaint against the insured, if proven,

4  would result in liability that is covered under the terms of the insurance policy. *Truck Ins. Exch. v.*

5  *VanPort Homes, Inc.*, 147 Wn.2d 751, 760 (2002). An insurer must defend the insured and file a

6  declaratory judgment action if it wishes to contest the duty to defend. *Id.* at 761. Second, is an

7  insurer's "duty to indemnify, which arises when an insured is actually liable to a claimant and that

8  claimant's injury is covered by the language of the policy."

9  　　Under Washington Law, "[i]nterpretation of insurance policies is a question of law, in which

10  the policy is construed as a whole and each clause is given force and effect." *Overton v. Consol. Ins.*

11  *Co.*, 145 Wn.2d 417, 424 (2002). A policy provision is ambiguous when, on its face, it is fairly

12  susceptible to two different and reasonable interpretations. *Morgan v. Prudential Insurance Co. Of*

13  *America*, 86 Wn.2d 432, 435 (1976). "If the policy language is clear and unambiguous, the court

14  may not modify the contract or create an ambiguity where none exists." *Id.*

15  　　Zurich argues that the Napiers' Complaint does not allege an "occurrence" as defined by the

16  policy. In the policy, "occurrence" is defined to mean "an accident, including continuous or repeated

17  exposure to substantially the same general harmful conditions." Here, there was no accident or

18  "occurrence" because the Napiers' complaint is based on allegations that Alia knew exactly what it

19  was doing: that Alia deliberately deposited soil where it chose, and did so without required permits,

20  in breach of Alia's contract with the Napiers. This is not the kind of case that liability insurance is

21  intended to cover – rather, it is a matter for a performance bond. Moreover, Washington courts have

22  held that there is no "occurrence" when an insured's liability is based on regulatory violations. *Holly*

23  *Mountain Resources v. Westport Ins. Co.*, 130 Wn. App. 635 (2005). *Holly Mountain* involved an

24  insured logging company that contracted with a landowner to cut timber and specified times and

25  places. Later the landowner sued for breach of contract and timber trespass; the Court of Appeals

26  ORDER - 4

agreed that there was no duty to defend because the claim against the insured was based on breach of

contract and intentional timber trespass, and there was no possibility that the landowner's claim arose

from an accident.  Similarly, argues Zurich, the source of the Napiers' alleged damages is Alia's

performance of work without required permits and Alia's alleged breach of its promises to obtain

necessary permits.  Zurich argues that it is difficult to construe the failure to obtain permits and to

comply with wetlands regulations as inadvertent or non-deliberate omissions; moreover, the failure to

obtain permits was not a cause of any property damage.  In summary, Zurich argues that the claims

against Alia are based on theories that Alia deliberately deposited soil where it chose, and did so

without required permits, in breach of Alia's contract with the Napiers, and this is not the kind of

case that liability insurance is intended to cover – it would be a matter for a performance bond.

Zurich's argument continues that not only does the Napiers' Complaint not allege an

"occurrence" as defined by the policy, it does not allege "bodily injury" or "property damage" as

defined in the policy.  Zurich points to the Napiers' amended complaint that alleges pure economic

damage resulting from government regulatory action, alleged broken promises, and loss of perceived

market value.  The term "property damage" under the policy does not include mere failure to comply

with regulatory standards.  The insurance policy at issue defines "property damage" as "Physical

injury to tangible property, including all resulting loss of use of that property."  ("Commercial

General Liability Coverage Form, Ex. 1 to Radcliffe Decl. (Dkt. # 14), ¶ 17.)  Zurich cites *Goodstein*

*v. Industrial Indemnity*, 509 F.3d 1042 (9th Cir. 2007) where the Court reasoned:

> Furthermore, the language of the policy supports our conclusion that Goodstein's
> claim for diminution in value cannot be covered under Industrial's policy.  First
> diminution in value does not alone constitute "property damage" where the policy
> language requires "physical injury to tangible property."  Nor can diminution in value
> fall within the realm of "damages" that the "insured shall become legally obligated to
> pay" because of "property damage."

*Id.* at 1053-54.  Zurich concludes on this point that the Napiers' alleged damages resulted from

Alia's performance of work without the required permits, not from damage to their property; the

ORDER - 5

remediation required by Pierce County was based entirely on the failure to comply with SEPA and

other county permit requirements.

Zurich's next argument is that the pollution exclusion bars coverage of any claimed damages

because of property damage flowing from a claim for dumping fill material into wetlands or the

potential for damage to the wetlands. The exclusion provides in pertinent part that the insurance

does not apply to:

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened
discharge, dispersal, seepage, migration, release or escape of "pollutants."

(Radcliffe Decl., Ex. 1 at 11-12.)

The term "pollutants" is defined in the Policy, and Zurich emphasizes the pertinent part:

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or
contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.
*Waste includes materials to be recycled, reconditioned or reclaimed.*

*Id.* at 17; emphasis added.) Thus, Zurich argues that the Napiers land either suffered no "property

damage" at all, or any "property damage" was based on the known and purposeful dumping of fill

material in wetlands or in a manner that threatened wetlands. Zurich also points to Pierce County's

cease and desist orders that treated the fill as a contaminant, citing a need for its removal, changes in

soil or water chemistry caused by the fill, and the need to prevent further incursion of fill material

into the wetlands. (Radcliffe Ex. 2 at 25-26, 33-34.)

Finally, Zurich argues that the set of "business risk exclusions" in the policy bar coverage for

the damages claimed by the Napiers. Zurich explains that the purpose of the business risk exclusions

is to prevent insureds from passing on to their insurers the ordinary costs of doing business. *Truck

Ins. Exch. v. VanPort Homes, Inc.,* 147 Wn.2d 751, 771-72 (2002)("liability policies do not insure

against the simple cost of poor performance.") Exclusion No. j(5) provides that there is no coverage

for damage to

ORDER - 6

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations;

(Radcliffe Decl. Ex. 1 at 12)  Exclusion No. j(6) provides that coverage is barred for damage to property that must be restored:

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

*Id.*  The term "your work" is defined and means work performed by Alia or on its behalf, and includes warranties or representations made concerning performance or quality, etc. of the work. ( *Id.* at 17A.)  Finally, business risk exclusion "m" (impaired property exclusion) "applies to claims arising out of the loss of use of tangible property, which has not been physically injured, resulting from either the insured"s ... faulty performance of [a] contract," *Hayden v. Mutual of Enumclas Ins. Co.*, 141 Wn.2d 55, 65-66 (2000).  The exclusion prevents a commercial liability insurance policy from being used as a performance bond to guarantee the performance and quality of the insured's work. *Id.* at 67.  Zurich argues that the Napiers assert that their entire property lost value as a result of Alia's failure to comply with promises to obtain permits and to return the property to its original condition.  If Napiers' claims include claims for loss of value to the property where the fill was deposited, then that property is "impaired" property" as defined by the Policy and remediation would have involved Alia removing the stockpiled soil as part of their contractual promise to return the soil to its original condition.  In summary, Zurich argues that the business risk exclusions address every theory of damage or recovery that the Napiers might assert, and bar coverage because the root of the Napiers' claim is an assertion that Alia simply failed to do what was promised.

### *Alia's Opposition Arguments*

Alia argues that the question posed by Zurich – whether the Napiers have pleaded damages related to an "occurrence" as defined by the Policy – rests on assumptions that are inconsistent with the facts of the case or even the facts as pleaded by the Napiers.  Alia argues:  First, Alia's agreement

ORDER - 7

with the Napiers was to use a portion of the Napiers' property as a staging area and temporary

stockpile site for excavated material that was later to be transported to an offsite landfill; only later

did the Napiers request to retain a portion of the excavated material; second, it is undisputed that Mr.

Napier either had only a partial understanding of the extent of the wetland area that actually existed

on the property, or only disclosed a partial understanding of the extent of the wetland area on the

property. Alia argues that the real question for the Court is as follows: was there an accident if Alia

caused damage to the Napiers' property by depositing excavated material in any area that no party

understood to be wetlands?

Alia argues that while Zurich's position is that the source of the Napiers' damages is Alia's

performance of work without required permits, this is only partially the case; all other damages

claimed by the Napiers were a result of the placement of the excavated fill on its property and the

damage would have been incurred regardless of any regulatory violation.

Alia argues that the Napiers allege both physical damage to and loss of use of their property.

Alia argues that the alleged physical contamination of the property is tangible property damage

whether or not it also violated a county regulation. Also, Alia argues that while a claim for

diminution of property value arguably may not be a covered loss, the Napiers' claim is more

accurately framed as a loss of use claim that is explicitly covered under the policy. Alia notes that

prior to Alia's presence on the property, they were receiving offers for more than One Million

Dollars, but as a result of the acts complained of, they were forced to sell their property for less than

its fair market value. Thus, argues Alia, there is unquestionably a causal link: but for the alleged

placement of fill within an area later determined to be wetlands, the property would not have been

damaged.

Alia next argues that the average insurance buyer would not construe the policy's definition

of "pollution" to include uncontaminated, excavated waste material.

Finally, Alia argues that the damages alleged in the complaint did not flow from Alia's

ORDER - 8

"work" as defined by the Policy. Alia argues that the only agreement between the Napiers and Alia was a license for the temporary use of the property for a stated purpose (not a lease); and that agreement did not provide for Alia to perform any work for the Napiers. As to the j(5) exclusion, Alia argues that stockpiling soil may arguably not be covered, but the Napiers complain of spreading soil into wetland areas away from the stockpile site, which did cause property damage. As to exclusions j(6) and m, Alia argues that it was not engaged in its work when it deposited excavated material on the Napiers' property because Alia was granted a license to use the property by the Napiers but it had no expectation of payment from the Napiers and the deposit of excavated material was well outside the scope of its contract with Pierce County. Moreover, Alia contends that the agreement between Alia and the Napiers is an "insured contract" under the Policy and is not excluded (citing Section V, ¶ 9).

### *Analysis and Conclusion*

Zurich is proceeding as it should by defending its insured, Alia, under a reservation of rights and by filing this declaratory judgment action to determine whether the claimant's (the Napiers') cause of action would, if proven result in covered damages. "[T]he duty to defend is determined by the facts alleged, not by the legal theories asserted." *Indian Harbor Ins. Co. v. Valley Forge Ins. Group*, 535 F.3d 359, 363 (5th Cir. 1008).

This brings up the question of whether Alia's alleged liability was caused by an "occurrence." Alia's Agreement with the Napiers (Napier Opposition, Ex. 2, Agreement) provided, among other things, as follows:

> 1) R. L. Alia Company will use property located in Tacoma WA, 176th Street, between 70th and 84th to store construction materials and pipe while performing construction for City of Tacoma.

*Id.* ¶ 1. Additionally, the Agreement provided that Alia would "not contaminate the property," that it would "leave the property in as-good condition as it currently exists, or better." *Id.* ¶¶ 3 and 5.

The Napiers' Amended Complaint in the Superior Court action alleges that in performing a

ORDER - 9

work under a contract with Pierce County for the Fredrickson Trunk Sewer Project, the contract required Alia to excavate and dispose of "vast volumes of project waste materials (primarily soil)." (Napiers' Opposition, Ex. 1, ¶ 3.3.) The Napiers' allege that Alia was obligated to dispose of the material in compliance with federal, state and local regulations, and to obtain all necessary permits and approvals for the work. *Id.* ¶3.4. The Complaint alleges the agreement between Napiers and Alia to stockpile excavated waste materials on the Napiers' property. *Id.* at ¶ 3.6. When the Napiers raised concerns with Alia about compliance with County regulations, Alia assured the Napiers that it would handle all issues arising from the work performed on plaintiffs' property and that the Napiers would suffer no harm from the project. *Id.* ¶ 3.8. Thereafter, the Napiers received notice from Pierce County that no permits had been obtained for the work, resulting in serious violation of County regulations. *Id.* ¶3.9. Alia assured the Napiers that it would resolve these matters raised by the County. *Id.* The County commenced regulatory action against Alia and the Napiers involving penalties and extensive remediation, and the County required removal of the waste materials excavated and deposited by Alia on the Napiers' property. *Id.* at ¶ 3.10. Removal costs exceeded $130,000, and the Napiers had to pay costs relative to wetland violations and corrections as well as various permits exceeding $7,100. *Id.* The Napiers were forced to remediate the property at their own expense, as Alia refused to cooperate in the remediation unless the Napiers took responsibility for a large percentage of the remediation costs. *Id.* at ¶ 3.11. The Napiers assert that their property suffered a diminution in value of approximately $300,000 as a direct result of Alia's actions. *Id.* ¶ 3.12. The Napiers also allege that as a direct result of Alia's failure to comply with permit requirements, plaintiffs' efforts to sell their property were frustrated. *Id.* ¶ 3.14. The Napiers allege that Pierce County has conclusively determined that Alia in fact violated County requirements, and imposed a penalty upon Alia, which it paid. The Napiers allege seven causes of action based on the above allegations.

ORDER - 10

The First cause of action against Alia is for breach of contract for Alia's failure to obtain all necessary permits for the work and to proceed with the work consistent with all regulatory requirements. The Second cause of action is for trespass for entering the Napiers' property without the necessary permits and approvals and proceeding with the unauthorized disposal and spreading of waste materials. The Third cause of action is for waste, in that Alia had reason to know that the illegal and unpermitted dumping of soils onto the Napiers' property was not authorized or permitted. The Fourth cause of action is for intentional/negligent interference with contractual expectations by Alia engaging in the unpermitted and unlawful disposal of soils from the County project onto their property. The Fifth cause of action is negligence in Alia breaching its duty to obtain necessary permits and by failing to adhere to governing regulations for the protection of wetlands. The Sixth cause of action is for fraudulent/negligent misrepresentation in that Alia made statements that induced the Napiers to allow the deposit of waste materials when Alia knew its work was not permitted. The Seventh and final cause of action is violation of the Consumer Protection Act by its deceptive conduct.

There was no "occurrence" under the terms of Alia's commercial general liability policy with Zurich in which "occurrence" is defined to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Policy Section V, Definitions, ¶ 13, Radcliffe Decl. attachment.) In performing its contract with Pierce County, Alia would be excavating material, and there is no dispute that Alia deposited excavation soil on the Napiers' property with their permission, that Alia knew there were wetlands on the property. The material was not accidentally placed on the property, and the County's citations included non-wetland violations as well. (Radciffe Decl., Ex. 3 at 32-24.)

The term "property damage" is also defined in the policy to mean "Physical injury to tangible property, including all resulting loss of use of that property." (Radcliffe Decl., Policy Section V, Definitions, ¶ 17.) The legal damages sought by the insured must be because of that property

ORDER - 11

1  damage.  The Napiers' alleged damages are because of Pierce County's enforcement action; the

2  Napiers' alleged that as a result of Alia engaging in the unpermitted and unlawful disposal of soils

3  from the County project onto their property, they had to remediate the property at their own

4  expense.  Moreover, Alia failed to comply with contractual promises to return the Napiers' land to

5  its original condition.  That Napiers' Superior Court complaint alleges pure economic damage

6  resulting from government regulatory action, alleged broken promises, and loss of perceived market

7  value.  The complaint is not for the covered loss under the policy of "property damage" from

8  "physical injury to tangible property" or "loss of use" of such property; rather the loss is occasioned

9  from failure to comply with regulatory standards.

10          The term "pollutant" is also defined in the policy at ¶ 15: "Pollutants" mean any solid, liquid,

11  gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis,

12  chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed."  The

13  material placed on the Napiers' property falls within the above definition.  Alia referred to the

14  excavated material in its Opposition stating that much of the material excavated from the trench

15  would need to be exported to an offsite waste disposal facility, and Alia identified a number of

16  potential privately-owned pieces of property to serve as temporary stockpile sites, both for the

17  excavated waste material, and for the stockpiling of import fill material.  The Napiers also referred to

18  the waste material deposited on their property by Alia.  Pierce County's November 1, 2004 notice to

19  the Napiers treated the waste excavation material as a pollutant, mentioning adverse soil or water

20  chemistry changes.  Under the circumstances, the excavated soil deposited on the Napiers' property

21  is waste material, treated as a pollutant by Pierce County, and the pollution exclusion bars coverage.

22          The "business risk" exclusions under the Policy are meant to prevent the insured from passing

23  on to their insurers the ordinary costs of doing business.  *Truck Ins. Exch. v. VanPort Homes, Inc.*,

24  147 Wn.2d 751, 771-72 (2002)("liability policies do not insure against the simple cost of poor

25  performance.)  Alia argues that the damages cited in the Napiers' Superior Court complaint did not

26  ORDER - 12

flow from Alia's "work" as defined by the policy.  This argument fails, because the Agreement with the Napiers facilitated Alia in doing its work for the County because it provided a temporary staging area for materials and excavated soil to be reused or disposed of as waste.  By failing to obtain the necessary permits for placement of such materials on the Napiers' property, Alia can be said to have been "cutting corners" and engaging to precisely the conduct that the business risk exclusions are designed to cover.

## CONCLUSION

Alia made conscious decisions about how it was going to conduct its work on the County Sewer Project, specifically, how to handle excavated soil from the project site.  The deliberate conduct in placing the soil on the Napiers' property is no accident and there is no "occurrence" under the Policy; the Napiers' claims do not seek "damages" because of "property damage," rather the Napiers' claims allege economic damages resulting from government regulatory action, alleged broken promises, and loss of perceived market value;  the excavated material deposited on property containing wetlands is "waste" and a "pollutant" under the Policy, thus barring coverage.  The activities for which the Napiers sued were part of Alia's sewer construction operations and constitute Alia's "work" within the meaning of the Policy.  Consequently, Zurich has no duty to defend or to indemnity Alia, and Zurich's Motion for Summary Judgment will be granted.

NOW, THEREFORE,

IT IS ORDERED:

(1)  Zurich American Insurance Company's Motion for Summary Judgment [Dkt. # 13] is GRANTED;

(2)  R. I. Alia Company's Motion for Summary Judgment [Dkt. # 18] is DENIED;

(3)  Zurich American has no duty to defend or indemnify R. L. Alia Company with respect to claims raised in the underlying Superior Court action, *Napier v. R. L. Alia Co.*, Pierce County Superior Court No. 07-2-07344-8, and Zurich American is entitled to be reimbursed by R.L. Alia

ORDER - 13

1 Company for any amounts paid by Zurich American to defend it in the *Napier* action.

2 (4) The Clerk shall enter judgment for Zurich American according to this Order and this

3 cause of action is DISMISSED.

4 DATED this 7th day of April, 2009.

FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

26 ORDER - 14